# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| NURIDDIN TOSHBOLTAEV,<br><br>  Petitioner,<br><br>vs.<br><br>ICE, *et al.*,<br><br>  Respondents. | CASE NO. 4:25-CV-02253-JRK<br><br>JUDGE JAMES R. KNEPP, II<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

On October 21, 2025, Petitioner Nuriddin Toshboltaev filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus. (ECF #1). He asserts his continued detention in Immigration and Customs Enforcement (ICE) custody pending removal is unlawful and requests his release or removal from the United States. (*Id.* at PageID 6-7). On November 5, 2025, this case was referred to me under Local Civil Rule 72.2 for preparation of a Report and Recommendation. (Non-document entry dated Nov. 5, 2025). On November 6, 2025, I directed Respondents to show cause why the writ should not be granted. (ECF #3).

On November 19, 2025, Respondents filed a Return of Writ and moved to dismiss the petition. (ECF #5). Although given five days from receipt of the writ to respond (ECF #3), Mr. Toshboltaev has not done so, nor has he requested further time, so this matter is now decisional. As detailed below, I recommend the District Court **GRANT** the motion and **DISMISS** the petition **WITHOUT PREJUDICE** to Mr. Toshboltaev's ability to re-apply for relief if circumstances change.

## Background

Mr. Toshboltaev is a native of Uzbekistan and a citizen of Russia. (ECF #5-1 at PageID 41). He entered the United States on June 22, 2023 in California and applied for admission. (ECF #1 at PageID 6; ECF #5-2 at PageID 44). That day, Mr. Toshboltaev was issued a notice to appear that alleged he was removable as an immigrant not in possession of a required valid entry document.

1

(ECF #5-2 at PageID 44). Mr. Toshboltaev was paroled into the United States pending removal proceedings. (ECF #5-1 at PageID 41).

On March 5, 2024, ICE detained Mr. Toshboltaev pending resolution of his removal proceedings. (*Id.*). On August 28, 2024, ICE ordered Mr. Toshboltaev removed to either Russia or Uzbekistan. (ECF #5-5 at PageID 54-55). The order became administratively final on November 15, 2024, when the Board of Immigration Appeals (BIA) dismissed Mr. Toshboltaev's appeal. (ECF #5-7 at PageID 61).

ICE requested travel documents from Russia either in October 2024, in November 2024, or on January 31, 2025. (*See* ECF #5-1 at PageID 42; ECF #1 at PageID 6; ECF #1-4 at PageID 18). On July 22, 2025, the Russian consulate notified ICE it was waiting for confirmation from the Russian Ministry of Internal Affairs to issue the travel document. (*Id.*). In July and August 2025, a third party sent letters to the Russian embassy on Mr. Toshboltaev's behalf requesting a response to ICE's request. (ECF #1-1 and 1-2). On October 16, 2025, the Russian consulate informed ICE that the Russian government had not yet authorized issuing the travel documents to Mr. Toshboltaev. (ECF #5-1 at PageID 42). On November 13, 2025, ICE sent Mr. Toshboltaev an application for an Uzbekistan travel document. (*Id.*). As of November 19, 2025, ICE expected a travel document would issue. (*Id.* at PageID 43). ICE possesses Mr. Toshboltaev's Russian passport, which is valid until September 22, 2026. (ECF #5-8 at PageID 62).

## LAW AND ANALYSIS

Mr. Toshboltaev argues he has been subject to "continued, unjustified, and harmful detention." (ECF #1 at PageID 6-7). He requests release from ICE custody under supervision, including with electronic monitoring, periodic check-ins, and restrictions on his travel. (*Id.* at PageID 7). Respondents argue Mr. Toshboltaev is lawfully detained because he is subject to a final order of removal and his detention has been extended beyond 90 days because he is inadmissible under 8 U.S.C. § 1182. (ECF #4 at PageID 21).

Under 28 U.S.C. § 2241, the district court may review the constitutionality and statutory basis of executive detention. *Rosales-Garcia v. Holland*, 322 F.3d 386, 394 (6th Cir. 2003). Habeas actions under § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien

2

from the United States within a period of 90 days." This 90-day period is often called the "removal period." "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Respondents concede Mr. Toshboltaev has been detained for "approximately one year after his removal became final on November 15, 2024." (ECF #5 at PageID 34). But Respondents argue Mr. Toshboltaev's detention has been extended because he is "an inadmissible alien under [8 U.S.C.] § 1182 [and] was subject to discretionary detention beyond the 90-day removal period" under 8 U.S.C. § 1231(a)(6). (*Id.* at PageID 33-34).

Under 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed who is inadmissible under [8 U.S.C. § 1182] . . . may be detained beyond the removal period." Further, 8 U.S.C. § 1182(a)(7)(A)(i) states:

> [A]ny immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality . . . is inadmissible.

The Immigration Judge found Mr. Toshboltaev was removable under this provision. (ECF #5-5 at PageID 52). Because Mr. Toshboltaev is inadmissible under § 1182, his detention may be extended beyond 90 days under § 1231(a)(6).

While § 1231(a)(6) does not state how long the government may extend detention beyond the 90-day removal period, the Supreme Court has held the government cannot detain a person "indefinitely" under that section. *See Zadvydas*, 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute . . . in light of the Constitution's demands" that "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. Detention of an alien subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish the removal. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Mr. Toshboltaev has been in ICE custody since March 5, 2024. (ECF #5-1 at PageID 41). His order of removal became administratively final on November 15, 2024, after the BIA dismissed his appeal. (ECF #5-7 at PageID 61). Mr. Toshboltaev has thus been in extended

3

detention longer than the 6-month period presumed reasonable by *Zadvydas*. Thus, the issue is whether Mr. Toshboltaev has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to Russia or Uzbekistan and, if so, whether Respondents offer "evidence sufficient to rebut that showing." *See id.*

Mr. Toshboltaev alleges ICE submitted his travel document application in November 2024 and he has received no response. (ECF #1 at PageID 6). He sent follow-up letters to the Russian embassy in August 2025 and still has received no response from the embassy. (*Id.* at PageID 7; *see also* ECF #1-1 and 1-2). He asserts Russia is uncooperative and not accepting returning nationals. (ECF #1 at PageID 7). He has attached multiple communications he had with ICE in August and September 2025 where the agency has reported it sent a request for a travel document to Russia but did not receive it or a denial. (*See* ECF #1-4). In one such communication, ICE referred Mr. Toshboltaev to the Russian embassy for information on processing times. (*Id.* at PageID 18).

The record is unclear when precisely ICE requested travel documents from Russia. At least three dates—October 2024, November 2024, and January 31, 2025—are listed in the record. (*See* ECF #5-1 at PageID 42; ECF #1 at PageID 6; ECF #1-4 at PageID 18). ICE reports that Russian authorities indicated they are waiting for approval from the Russian Ministry of Internal Affairs before the travel documents can be issued. (ECF #5-1 at PageID 42). As of October 16, 2025, this approval has not been given. (*Id.*). But whether there has been no response for 12, 14, or 15 months, "mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them," does not meet the "good reason" standard of *Zadvydas*. *See Manjulaben v. ICE*, No. 4:25-cv-2252, 2025 WL 2977713, at *2 (N.D. Ohio Oct. 22, 2025) (collecting cases). Although Mr. Toshboltaev asserts Russia is not cooperating and is not accepting returned nationals, ICE has attempted to secure a travel document from Russia, received updates from the Russian government, and Russia has not yet denied his travel document. Despite ICE's lack of success in obtaining a Russian travel document, this is not a case where the government has made no effort to effect removal. *See Izbitski v. Carnes*, No. 1:25-cv-778, 2025 WL 3754485, at *3 (D.N.M. Dec. 29, 2025) (citing cases where little-to-no effort was made to effect removal suggested good reason that removal was not significantly likely).

Moreover, removal to Russia is not the only option given Mr. Toshboltaev's alternative order of removal to Uzbekistan. (ECF #5-5 at PageID 54-55). ICE only recently sent Mr.

4

Toshboltaev the paperwork to request an Uzbek travel document. If Mr. Toshboltaev completes the travel application, the Uzbek government can consider it and either grant or deny it. Thus, even presuming Russia is unwilling to accept Mr. Toshboltaev, there is a significant likelihood that he could be removed to Uzbekistan in the reasonably foreseeable future. *See Surovtsev v. Noem*, No. 1:25-cv-160, 2025 WL 3264479, at *6 (N.D. Tex. Oct. 31, 2025) (finding significant likelihood of removal in the reasonably foreseeable future for noncitizen born in the former Soviet Union who was denied a Russian travel document but recently applied for a Ukrainian travel document). At this time, there is no evidence that Uzbekistan would not cooperate once presented with the request for travel authorization or that Mr. Toshboltaev could not receive an Uzbek travel document. *See Vaskanyan v. Janecka*, No. 5:25-cv-1475, 2025 WL 2014208, at *4 (C.D. Cal. June 25, 2025) (granting relief under *Zadvydas* where, after denial of a Russian travel document, ICE pursued removal to Armenia but the petitioner could not establish his Armenian ethnicity by descent and thus would not qualify for Armenian citizenship). Mr. Toshboltaev appears to have Uzbek citizenship (*see* ECF #5-3 at PageID 48) and his family appears to hold Uzbek passports (*see* ECF #5-9 at PageID 65). Taken together with the barrier to Mr. Toshboltaev's removal to Russia apparently being bureaucratic delay by the Russian government, I conclude there is a significant likelihood of his removal in the reasonably foreseeable future.

      Although Respondents argue Mr. Toshboltaev has not been cooperating with ICE officials by withholding his Russian and Uzbek passports (ECF #5 at PageID 37-38), nothing in the record (including what Respondents submitted) substantiates that claim. The application for an Uzbek travel document was forwarded to the liaison at Mr. Toshboltaev's prison a few days before Respondents filed the Return of Writ and nothing indicates Mr. Toshboltaev has not been cooperative with ICE. (*See* ECF #5-1 at PageID 43). Respondents attach a portion of the transcript of Mr. Toshboltaev's removal proceeding suggesting he is withholding an Uzbek passport, but they do not further clarify the issue. True, Mr. Toshboltaev testified he holds an Uzbek passport, but also that he has submitted "a copy of my both passports" (*sic*). (ECF #5-9 at PageID 64). Though the attorney for ICE disputed that, saying Mr. Toshboltaev "only submitted a copy of your Russian passport, as well as Uzbek passports for your family, including your father, wife, and daughter," counsel did not pursue the question and asked about other matters. (*Id.* at PageID 65). Moreover, Respondents attach a government-generated "subject profile" where Mr. Toshboltaev's "current

5

passport" is listed being from Russia without any mention of an Uzbek passport. (*See* ECF #5-3). Together, these records do not indicate Mr. Toshboltaev has an Uzbek passport, let alone that he has withheld it.

At this time, Mr. Toshboltaev has not demonstrated good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. The apparent barrier to his removal to Russia is bureaucratic delay by the Russian government in issuing travel documents, which is not enough on its own to demonstrate good reason. Even if Russia refused to provide a travel document, Mr. Toshboltaev has been ordered alternatively removed to Uzbekistan and nothing suggests any barrier to his receiving an Uzbek travel document once his application is submitted.

If circumstances change, Mr. Toshboltaev may file a new § 2241 petition setting forth good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future. *See Estenor v. Holder*, No. 1:11-cv-743, 2011 WL 5572596, at *4 (W.D. Mich. Oct. 24, 2011) (denying petition without prejudice to future relief if circumstances change), *report and recommendation adopted*, 2011 WL 5589279 (W.D. Mich. Nov. 16, 2011).

## Conclusion

I recommend the District Court **GRANT** the Respondent's motion and **DISMISS** the petition **WITHOUT PREJUDICE** to Mr. Toshboltaev's ability to re-apply for relief if circumstances change.

Dated: January 15, 2026

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** ***See*** **Fed. R. Civ. P. 72(b)(2);** ***see also*** **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).